**In re ETHICS ADVISORY PANEL
OPINION NO. 92–1.**

**No. 93–41–M.P.**

Supreme Court of Rhode Island.

June 25, 1993.

Nina Igliozzi, Ethics Advisory Panel, Mary Lisi, Chief Disciplinary Counsel, David Curtin, Disciplinary Counsel, for plaintiff.

Stephen Rodio, Barbara Margolis, William Gosz, Michael Goldenberg, for defendant.

Lauren Jones, for amicus curiae RI Bar Ass'n. Pamelee M. McFarland, for amicus curiae ACLU.

### OPINION

MURRAY, Justice.

This matter came before us pursuant to a petition for review filed by the Rhode Island Chief Disciplinary Counsel (disciplinary counsel), requesting that this court review and rescind the Supreme Court Ethics Advisory Panel Opinion No. 92–1, issued January 14, 1992.

The statement of the facts contained in the petition for review set forth that in 1991 the disciplinary counsel received an inquiry from a member of the Rhode Island Bar regarding the inquiring attorney's ethical obligations. According to the disciplinary counsel, the attorney reported that he was successor counsel on a case. During the course of his representation of his clients, he became aware that former counsel had embezzled a substantial amount of the clients' money. The inquiring attorney reported that he learned of this embezzlement by way of an admission from former counsel, not by way of a disclosure from the clients. The inquiring attorney then reported that former counsel repaid to the clients the embezzled funds and the clients directed the inquiring attorney not to report the embezzlement to the disciplinary authorities because of the clients' "friendly relationship with predecessor counsel."

After hearing these facts, the disciplinary counsel advised the inquiring attorney to seek an opinion from the Supreme Court Ethics Advisory Panel (Ethics Advisory Panel or panel) regarding whether the inquiring attorney may or must report the embezzling attorney to the disciplinary authorities when the client has directed the attorney not to disclose the embezzlement.

The Ethics Advisory Panel provided this court with a more detailed version of these events. According to the panel, it received a letter from an attorney requesting ethical advice. The letter stated that another attorney, "attorney X," had represented a corporation on various legal and business matters since 1987. Attorney X referred a litigation matter to the inquiring attorney regarding a lease agreement that attorney X had negotiated previously on behalf of the client. Pursuant to the lease agreement, attorney X held client funds in an escrow account. After several years of litigation the inquiring attorney negotiated a settlement of the dispute and the client agreed to the settlement. The inquiring attorney then called attorney X to arrange for the release of the funds from the escrow account. During that conversation, attorney X told the inquiring attorney that the funds were not available because attorney X had used the funds without the client's authorization.

The inquiring attorney then advised the client of the criminal nature of attorney X's conduct and stated that he or she had a duty to report the ethical violation to the disciplinary authorities. According to the brief submitted by the panel, "[t]he client would not authorize a disclosure and expressed a concern to have the client funds replaced. The client believed that to report the misconduct would interfere with the likelihood of the funds being replaced."

Subsequently, attorney X replaced the client's funds. The client was satisfied with the restoration of the funds and refused to authorize disclosure of the misconduct. According to the panel, the client continued to use attorney X's services on other legal matters.

The aforementioned facts implicate two of the most fundamental ethical obligations of attorneys engaged in the practice of law. The first is the lawyer's duty of confidentiality. This duty is set forth in Rule 1.6 of the Rules of Professional Conduct, adopted by this court and set forth under Rule 47 of the Supreme Court Rules, which states:

"Confidentiality of Information.—(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

(b) A lawyer may, but is not obligated to, reveal such information to the extent the lawyer reasonably believes necessary:

(1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in

any proceeding concerning the lawyer's representation of the client."

The second fundamental duty triggered by these facts is an attorney's duty to report to disciplinary authorities the professional misconduct of another attorney. Rule 8.3 of the Rules of Professional Conduct states in pertinent part:

"Reporting Professional Misconduct.— (a) A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority.

\* \* \* \* \* \*

(c) This rule does not require disclosure of information otherwise protected by Rule 1.6."

The Ethics Advisory Panel reviewed these rules and issued the following opinion:

"An attorney seeks Panel advice as to whether or not an attorney may report another lawyer's professional misconduct without the client's consent when the professional misconduct was discovered during the course of representation of a client.

"The Panel notes that pursuant to Rule 1.6, an attorney is given discretion to reveal information relating to the representation of a client in only two situations. If neither of these situations arise, the attorney is prohibited from making a disclosure. The Panel also notes the comment to Rule 1.6 which states in part, 'The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.'

"Assuming the information the attorney received is confidential and within the attorney-client privilege, the Panel is of the opinion that absent the consent of the client, the attorney is prohibited by Rule 1.6 of the Rhode Island Rules of Professional Conduct from revealing it, even in the context of reporting another

attorney's misconduct. See also Rule 8.3(c) which states that a report regarding another attorney's misconduct is not required where it would involve violating Rule 1.6."

In this petition for review the disciplinary counsel argues that the Rules of Professional Conduct do not prohibit a lawyer from reporting the serious ethical misconduct of another attorney without client consent when the reporting attorney learned of the misconduct by way of an admission by the accused attorney and not by way of disclosure from the client. In the alternative, in the event we find that the panel properly interpreted Rule 1.6 and Rule 8.3, the disciplinary counsel suggests that we amend the Rules of Professional Conduct to clarify an attorney's duty to report the ethical misconduct of another attorney.

Pursuant to an order issued by this court, we invited "all interested members of the Bar" to file briefs as amicus curiae. The Rhode Island Bar Association, as amicus curiae, has argued that the disciplinary counsel lacks standing to seek review of an opinion of the Ethics Advisory Panel. In addition the Rhode Island Bar Association requests that we address the "lack of a real record" in this case. Thus, before considering whether the Ethics Advisory Panel correctly interpreted the Rules of Professional Conduct in this controversy, we address these preliminary matters.

## I

### STANDING

■ Article III, Rule 5, of the Rhode Island Supreme Court Rules (formerly Rule 42–5) lists the duties and powers of the disciplinary counsel. Included among these powers and duties is the obligation of the disciplinary counsel "to investigate all matters involving alleged misconduct which come to his/her attention whether by complaint or otherwise." Absent from this list, however, is the enumerated power to seek review by this court of opinions issued by the Ethics Advisory Panel. Similarly, the Rules of the Ethics Advisory Panel do not provide a method for this court's review of

opinions the panel issues. The Rhode Island Bar Association argues that absent a rule change granting the disciplinary counsel the authority to seek review of Ethics Advisory Panel opinions, the disciplinary counsel lacks standing.

We believe that the disciplinary counsel does have standing to seek review of this ethics opinion in this case. Certainly parties can satisfy the standing requirement by demonstrating that a court rule or legislative enactment expressly grants them standing to appear before this court. However, the general rule for standing, in the absence of a court rule or statute, requires that a party prove injury in fact. *Rhode Island Ophthalmological Society v. Cannon,* 113 R.I. 16, 26, 317 A.2d 124, 129 (1974).

In the present case the disciplinary counsel satisfies the injury-in-fact requirement. Two of the functions of the disciplinary counsel are (1) to investigate all matters involving alleged misconduct and (2) to prosecute all disciplinary proceedings before the disciplinary board. *See* Article III, Rule 5, of the Supreme Court Rules. In this controversy the Ethics Advisory Panel's interpretation of the Rules of Professional Conduct limited the ability of the disciplinary counsel to investigate and prosecute attorney misconduct. In this manner the disciplinary counsel did suffer an injury in fact sufficient to satisfy the standing requirement.

Our conclusion on the standing issue also is consistent with our opinion in *In re Ethics Advisory Panel Opinion,* 554 A.2d 1033 (R.I.1989). We held in that case that although "it would only be in the rarest of circumstances that this court would respond to a request that we review one of the panel's opinions," we would review panel opinions in cases wherein the issue addressed is of extreme importance to the legal profession. *Id.* at 1034. This controversy meets this standard because it involves two of the core ethical obligations of attorneys.

Moreover, by considering this question, we fulfill our constitutional obligation to exercise our supervisory power over the legal profession under article X, section 2, of the Rhode Island Constitution and our statutory obligation to "issue * * * all other * * * processes necessary for the furtherance of justice and the due administration of the law." General Laws 1956 (1985 Reenactment) § 8-1-2. We conclude that the disciplinary counsel does have standing and that this matter is properly before us.

II

THE RECORD IN THIS CASE

■ The Rhode Island Bar Association raises an important argument regarding the factual record on petitions to review opinions of the Ethics Advisory Panel. These petitions do not come before us following an adversary proceeding in which adjudicative facts are established. The disciplinary counsel in this matter provided this court with her statement of the facts, supported by an affidavit. Similarly, the Ethics Advisory Panel provided its statement of the facts. The panel, however, did not provide us with a copy of the letter it received from the inquiring attorney. The Rhode Island Bar Association maintains that there is an inherent bias in a party's rendition of the facts as provided in a party's brief, which ultimately may be significant to our resolution of these matters.

The Rhode Island Bar Association suggests two possible resolutions to this problem: (1) that we rely solely upon the facts set forth in the panel's opinion or (2) that we require the panel to provide a version of the inquiring attorney's letter, sanitized of identifying characteristics. This version would have to be sanitized in order to keep confidential the "name and letter of an inquiring attorney" in accordance with Rule 6 of the Rules of the Ethics Advisory Panel.

We decline to rely solely on the facts set forth in the advisory panel opinions. Often, as in this case, the opinions provide little factual basis underlying their rulings, and an opinion may make a number of legal assumptions based on factual predicates. In order to make our review effective, we require a more detailed statement

of the facts. We agree, however, that in the future the Ethics Advisory Panel should provide this court with a version of the inquiring attorney's letter, sanitized of all identifying information.

Regarding this controversy, we rely on the undisputed facts set forth in the parties' briefs. Our review of the factual assertions of the parties reveals only two inconsistencies between the version of events as set forth by the disciplinary counsel and the version of events as set forth by the Ethics Advisory Panel. First, the disciplinary counsel uses the plural "clients," indicating that there may have been more than one client in this case. The Ethics Advisory Panel uses the singular "client," thereby indicating that there was only one client. This difference has no bearing on our review and we adopt the panel's version that there was one client.

The second factual difference between the disciplinary counsel's version of the facts and the Ethics Advisory Panel's version concerns the reason the client refused to authorize disclosure of the misconduct to the proper authorities. The disciplinary counsel, relying upon her initial conversation with the inquiring attorney, stated that the client's refusal to authorize disclosure was based upon the friendly relationship between the client and attorney X. In contrast, the Ethics Advisory Panel stated that the client withheld consent because the client was concerned that reporting attorney X would interfere with the client's efforts to convince attorney X to restore the embezzled funds. Rhode Island's version of Rule 1.6 does not authorize an attorney to second guess a client's decision to refuse disclosure of otherwise confidential information. This factual discrepancy also has no bearing on our decision.

Thus, relying on the undisputed facts, we address the content of Ethics Advisory Panel Opinion 92–1.

### III

### ETHICS ADVISORY PANEL OPINION 92–1

■ Our analysis of the Rules of Professional Conduct begins with Rule 8.3(a), which requires "[a] lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects" to inform the proper authorities.

In this case none of the parties disputes the suggestion that attorney X's embezzlement of client funds is a violation of the Rules of Professional Conduct that raises a substantial question regarding attorney X's fitness to practice law. In addition, it is clear that on the basis of the admission by attorney X, the inquiring attorney had "knowledge" of the violation as required by Rule 8.3. Thus, absent a confidentiality issue, it is clear that the inquiring attorney would be under an ethical obligation to report the embezzlement and indeed would be subject to discipline if the inquiring attorney failed to report the embezzlement.

Rule 8.3(c), however, expressly exempts Rule 1.6 confidences from disclosure. Pursuant to Rule 1.6, an attorney "shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized." The official comment to Rule 1.6 helps define the phrase "shall not reveal information relating to the representation of a client." The comment states:

"The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. *The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the*

*representation, whatever its source."* (Emphasis added.)

Rule 1.6 permits but does not require disclosure of otherwise confidential information in two limited circumstances: (1) "to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm" or (2) in controversies between the lawyer and the client or when the lawyer needs the information to establish a defense to a criminal or a civil charge involving the lawyer's representation of the client.

Applying these rules, the Ethics Advisory Panel concluded that the inquiring attorney's knowledge of attorney X's embezzlement was confidential information because the inquiring attorney learned of the embezzlement during the course of his representation of a client. Moreover, the panel noted that neither of the two exceptions to Rule 1.6 applied, and accordingly Rule 1.6 required the inquiring attorney to keep his or her knowledge of the embezzlement confidential.

The disciplinary counsel maintains that the Ethics Advisory Panel interpreted Rule 1.6 too broadly. The disciplinary counsel asserts that we are not bound by the comment to Rule 1.6 and that in order to give strength to the reporting requirement under Rule 8.3, we should find that the inquiring attorney's knowledge of the embezzlement falls outside the scope of Rule 1.6.

The disciplinary counsel also suggests that because the admission by attorney X was not a "privileged" communication pursuant to the rules regarding the attorney-client evidentiary privilege, the admission was not a protected communication pursuant to Rule 1.6. In support of this argument, the disciplinary counsel cites *In re Himmel,* 125 Ill.2d 531, 127 Ill.Dec. 708, 533 N.E.2d 790 (1988). In *Himmel* the Illinois Supreme Court interpreted Rule 1–103(a) of the Illinois Code of Professional Responsibility, which states:

" 'A lawyer possessing unprivileged knowledge of a violation of Rule 1–102(a)(3) or (4) shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation'." *Himmel,* 125 Ill. 2d at 540, 127 Ill.Dec. 708, 533 N.E.2d at 793.

The *Himmel* court concluded that attorney Himmel did have knowledge of a communication that fell outside the attorney-client privilege. The fact that the communication was not "privileged," combined with the court's finding that Himmel stood to gain financially from the nondisclosure of the violation led the Illinois Supreme Court to discipline Himmel for failing to comply with the reporting requirements. *Himmel,* 125 Ill.2d at 542, 545, 127 Ill.Dec. 708, 533 N.E.2d at 794–96.

The disciplinary counsel's reliance on *Himmel* in this case is misplaced. Unlike Illinois' rule, Rule 1.6 of the Rhode Island Rules of Professional Conduct protects from disclosure a broader range of information than would be protected under the attorney-client privilege.[1] Even though the attorney-client evidentiary privilege may not protect this information, Rule 1.6 prevents the inquiring attorney from disclosing it because it relates to the representation of a client.

■ Turning to the disciplinary counsel's suggestion that in order to strengthen Rule 8.3, we should limit the scope of Rule 1.6, we note that this is not a situation in which the intent of the drafters of the Rules of Professional Conduct is unclear or ambiguous. Attorney X's admission falls within the scope of the broad definition of confidential communication under Rule 1.6 because the admission was related to his or her representation of his or her client. This broad confidentiality rule reflects the drafter's belief that confidentiality is central to the attorney-client relationship because it encourages clients to seek early legal assistance and "facilitates the full development of facts essential to proper

---

1. We note that in *In re Himmel,* 125 Ill.2d 531, 127 Ill.Dec. 708, 533 N.E.2d 790 (1988), the court's reliance on the evidentiary attorney-client privilege to determine the scope of the ethical standard for viewing privileged information has been the subject of controversy in scholarly writings. *See, e.g.,* Ronald D. Rotunda, *The Lawyer's Duty to Report Another Lawyer's Unethical Violations in the Wake of Himmel,* 1988 U. Ill. L.Rev. 977, 987 (1988).

representation of the client." Comment to Rule 1.6; *see also* 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering,* § 1.6 at 127–33 (2d ed. 1992 Supp.) (discussing the drafting of Rule 1.6 by the American Bar Association).

In addition Rule 8.3 expressly exempts from the reporting requirement confidential information under Rule 1.6. The drafters of the rules anticipated this conflict between Rule 1.6 and Rule 8.3 and concluded that a lawyer's duty of confidentiality owed his or her client supersedes a lawyer's obligation to report attorney misconduct. The text of the Rules of Professional Conduct clearly supports the opinion of the Ethics Advisory Panel.

This is not to say that we are not concerned with the ramifications of this decision. In this case a lawyer has engaged in criminal conduct as well as violated the Rules of Professional Conduct. The failure of the Rules of Professional Conduct to facilitate the investigation and prosecution of attorney X is correspondingly a failure of the legal profession to regulate itself effectively. This failure fuels the perception that under a cloak of confidentiality, the legal profession is engaged in a cover-up of attorney misconduct. *See* David C. Olsson, *Reporting Peer Misconduct: Lip Service To Ethical Standards Is Not Enough,* 31 Ariz. L.Rev. 657, 658, 675 (1989).

Our research in this area, as guided by the briefs of the parties and the briefs filed by amicus curiae, reveals that some states have promulgated a confidentiality rule that allows disclosure of information in a broader set of circumstances than would be allowed under Rule 1.6 of Rhode Island's Rules of Professional Conduct. *See* 2 Geoffrey C. Hazard, Jr. & W. William Hodes, §§ AP4:103–AP4:105 at 1259–1266 (outlining the manner in which states have adopted variations of Rule 1.6). The

Minnesota rules, for example, would allow an attorney to report to disciplinary authorities the misconduct of another attorney even without client consent, in a limited set of circumstances. *See* Rule 1.6(b)(6) of the Minnesota Rules of Professional Conduct. In addition some states have expanded the future crimes exception to Rule 1.6 in order to permit an attorney to disclose a client's intention to commit "any crime." 2 Geoffrey C. Hazard, Jr. & W. William Hodes, § AP4:103 at 1261.

We believe these amendments to Rule 1.6 of the Rules of Professional Conduct are worth considering. We therefore request the Supreme Court Committee to Study the Rules of Professional Conduct to canvass other jurisdictions' versions of the confidentiality principle, consider amending Rhode Island's version of Rule 1.6, and report the committee's findings to this court.[2] However, as the rules currently exist, we conclude that Ethics Advisory Panel Opinion 92–1 must stand.

We wish to thank Pamelee M. McFarland on behalf of the American Civil Liberties Union, Rhode Island Affiliate; Lauren E. Jones on behalf of the Rhode Island Bar Association; and Stephen A. Rodio on behalf of the Committee to Study the Rules of Professional Conduct for their excellent amicus briefs. Their work contributed greatly to a meaningful discussion of these ethical issues and assisted this court in fulfilling its obligation to supervise the legal profession in Rhode Island and to foster public trust in its operation.

For the reasons set forth in this opinion, we deny the petition for review and affirm the opinion of the Ethics Advisory Panel.

LEDERBERG, J., did not particpate.

---

2. This court established the Committee to Study the Rules of Professional Conduct in January 1984. *Its mandate was to study the American Bar Association Model Rules of Professional Conduct and to make recommendations to this court regarding their adoption.* In 1987 the committee completed a final report to this court and we adopted the proposed rules, effective November 15, 1988. Since that time the committee has had an ongoing role regarding suggested changes and amendments to the rules. We are apprised of the fact that the committee already has considered amendments to Rule 1.6 and Rule 8.3. We request, however, further study and a report on the suggested amendments.