**In the Matter of Daniel J. SILVA.**

**No. 93–668–M.P.**

Supreme Court of Rhode Island.

Jan. 14, 1994.

Mary Lisi, Chief Disciplinary Counsel, for plaintiff.

John Dolan, Rice, Dolan & Kershaw, Providence, for defendant.

## OPINION

PER CURIAM.

The respondent, Daniel J. Silva (Silva), appeared before this court on December 2, 1993, pursuant to an order to show cause why discipline should not be imposed. The Disciplinary Board (board) conducted an evidentiary hearing and received legal memoranda from the respondent and disciplinary counsel. The board has filed with us its decision and a concurring opinion signed by three members of the board.

The board found that Silva violated several provisions of the Rules of Professional Conduct when he failed to report a diversion of mortgage funds by his long-time friend Edward Medeiros. Silva served as counsel to Medeiros's mortgage company, Medcon Mortgage Corporation (MEDCON), and Suncoast Savings and Loan of Hollywood, Florida (Suncoast). In his capacity as closing attorney for Suncoast, Silva received wire transfers of mortgage proceeds in his client account. Upon receipt of the wire transfers from Suncoast, Silva simply turned the proceeds over to Medeiros and/or MEDCON for disbursement. In the fall of 1990 Silva learned that Medeiros had diverted funds from a closing funded by Suncoast in which Silva acted as closing attorney. The diverted funds were designated to pay off a preexisting mortgage on the property. Silva advised Medeiros that his conduct was criminal. Silva did not notify Suncoast of the diversion of funds, nor did he inform the title insurance company, which had issued a title policy that did not except the prior mortgage from coverage, that the prior mortgage had not been discharged. Silva testified that Medeiros forbade him to do so on the basis of Medeiros's assertion of the attorney/client privilege on behalf of both MEDCON and himself personally.

In December 1990 Silva received a wire transfer from Suncoast for another closing with MEDCON. Notwithstanding his knowledge of the previous diversion of funds by Medeiros, Silva did not disburse the funds in accordance with the terms listed on the closing sheet; instead, he turned the proceeds over to MEDCON. Silva kept $100 of the proceeds as his fee for serving as a conduit of the funds. Medeiros converted those funds to his own use, and was subsequently convicted and imprisoned. The respondent was never charged with committing a criminal act.

The respondent's position before the board and this court is that he was prohibited from disclosing Medeiros's defalcation by the provisions of Rule 1.6 of the Rules of Professional Conduct.[1] Respondent also took the posi-

---

1. Rule 1.6 of the Rules of Professional Conduct provides:

   "**Confidentiality of Information.**—(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

   (b) A lawyer may, but is not obligated to, reveal such information to the extent the lawyer reasonably believes necessary:

   (1) to prevent the client from committing a criminal act that the lawyer believes is likely to

tion that he had no obligation to protect Suncoast's interests. We do not agree with either of his contentions.

On the basis of the record before us, we believe that Silva had an obligation to both MEDCON and Suncoast to ensure that the transactions in which he acted as attorney and/or agent were carried out with fair dealing and good faith. We further believe that Silva had an obligation to report Medeiros's overt act of diverting the funds as soon as he learned of it. In addition Silva should have withdrawn from representing both MEDCON and Suncoast as soon as he discovered Medeiros's fraud.

Although we consider Silva's failure to act appropriately and to make the requisite disclosures serious breaches of his ethical obligation, we find no evidence that Silva's actions were motivated by personal gain. Rather, he appears to have had a genuine belief that Medeiros's assertion of the attorney/client privilege and the requirements of Rule 1.6 prohibited the disclosure we now say was required.

Silva did not appear to appreciate and understand to whom he owed the duty of confidentiality. It is apparent from this record, however, that he was counsel to the corporate entity MEDCON, and therefore, it was to MEDCON he owed the duty of confidentiality. Silva's dealings with Medeiros did not establish the attorney/client relationship that would trigger the application of the prohibitions against disclosure encompassed in Rule 1.6. Therefore, Silva's obligations to both Suncoast and MEDCON required him to disclose Medeiros's overt criminal act of conversion of the funds.

This court concurs with the findings of the disciplinary board that Silva exercised very poor judgment and that he engaged in serious misconduct. We are constrained however to depart from the board's recommendation for sanction. We believe that Rule 1.6 has created a great deal of confusion among the members of the Rhode Island Bar. This

court recognized some of the deficiencies of the rule when we considered Opinion 92-1 of the Ethics Advisory Panel. *See In re Ethics Advisory Panel Opinion No. 92-1,* 627 A.2d 317 (R.I.1993). We therefore censure Silva for his failure to fulfill his ethical obligations to the parties to these transactions. The court's issuance of this sanction rather than the three-month suspension of Silva's license is due in part to the absence of any motive for personal gain and Silva's ten years at the bar without a disciplinary complaint. The court's position on the appropriate level of sanction, however, would be more severe were it not for the apparent confusion in the mind of this attorney concerning whom he represented and the silence of Rule 1.6 on that question.

---

result in imminent death or substantial bodily harm; or

  (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to

a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client."